**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HEDELITO TRINIDAD y GARCIA,<br><br>    Petitioner,<br><br>    v.<br><br>MICHAEL BENOV (Warden),<br><br>    Respondent. | No. CV 08-07719-MMM(CW)<br><br>[~~PROPOSED~~]<br>ORDER GRANTING PETITION<br>FOR WRIT OF HABEAS CORPUS |

The petition for writ of habeas corpus is **GRANTED** for the reasons and on the conditions stated below.

## BACKGROUND AND PROCEEDINGS

Petitioner Hedelito Trinidad y Garcia challenges the legality of his federal custody pending extradition to the Philippines. The present action is the third of three related cases in this court, namely, an extradition proceeding and two habeas petitions.[1]

---

[1] This background information is taken from the Report and Recommendation (docket no. 39) filed February 13, 2009, which contains a detailed discussion of the extradition process and the proceedings and issues in Petitioner's three cases, along with citations to the records and to legal authorities.

The extradition proceeding was initiated on December 18, 2003, when the United States Attorney filed a complaint seeking Petitioner's extradition to the Philippines on a charge of kidnaping for ransom and the court issued a bench warrant.  [See United States v. Trinidad, Case No. M 03-2710.]  Petitioner was arraigned in this court on October 8, 2004, and the federal public defender was appointed to represent him.  On December 10, 2004, the case was re-docketed as Extradition of Trinidad, No. CV 04-10097-MMM(CW), and a formal request for extradition was filed.  The matter was briefed extensively, and the magistrate judge held an evidentiary hearing (on May 19 and 24, 2005, with closing arguments on August 25, 2005).[2]

In the extradition proceeding it was undisputed that this court had jurisdiction, that a valid treaty was in force, and that the charged offense was covered by the treaty.  The parties disputed whether there was probable cause to believe Petitioner committed the charged offense.  Petitioner also argued for denial of certification on humanitarian grounds under the United Nations Convention Against Torture (the "Torture Convention").  The magistrate judge found that, in an extradition proceeding, the court had no authority to deny certification on such grounds, and that such a claim was not ripe for judicial review unless and until the Secretary of State made a final decision to extradite Petitioner.

---

[2] Extradition proceedings are usually brought before magistrate judges.  The magistrate judge's role is to determine whether the charged offense is extraditable under the relevant treaty, and whether there is probable cause to sustain the charge against the person in question.  On making such determinations, the magistrate judge is required to certify the person as extraditable to the Secretary of State.  See Vo v. Benov, 447 F.3d 1235, 1237 (9th Cir. 2006); Prasoprat v. Benov, 421 F.3d 1009, 1012 (9th Cir. 2005).

After considering evidentiary issues, the magistrate judge concluded that the minimum standard of probable cause had been met. The magistrate judge's Certification of Extraditability was filed September 7, 2007.  In an order filed September 18, 2007, the magistrate judge stayed extradition until completion of habeas corpus proceedings in the district court.[3]

On October 5, 2007, Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, which was docketed as No. CV 07-6387-MMM.  Petitioner challenged the certification, contending that the magistrate judge erred in admitting supplemental evidence; that, even with the supplemental evidence, the probable cause finding was not supported; and that, even if a probable cause finding was supported, Petitioner's extradition would violate federal law and the Torture Convention.

On December 20, 2007, Petitioner moved to stay the first habeas proceeding until the Secretary of State had reviewed his Torture Convention claim.  In an order filed March 3, 2008, the court denied the motion to stay, finding that a Torture Convention claim would only be ripe for judicial review if the Secretary decided to extradite Petitioner, and that Petitioner could seek a stay of extradition, if necessary, once the district court decided the habeas petition.  On April 15, 2008, Petitioner moved for reconsideration of the order denying a stay.  In an order filed May 13, 2008, the court denied the

---

[3] A magistrate judge's certification of a person as extraditable is not directly appealable but may be challenged in a habeas petition filed as a new action in the district court. <u>Vo</u>, 447 F.3d at 1240. The district court's habeas review of a magistrate judge's extradition order is limited to whether the magistrate had jurisdiction, whether a treaty in force covered the charged offense, and whether competent evidence supported a finding of probable cause. <u>Vo</u>, 447 F.3d at 1240.

motion, again finding the Torture Convention claim not ripe for review unless and until the Secretary decided to extradite Petitioner.

In an order filed July 16, 2008, the court denied Petitioner's first habeas petition, rejecting the evidentiary arguments and affirming the probable cause finding. The court also found, again, that the Torture Convention claim, if reviewable, would not be ripe until the Secretary had made a final decision to surrender Petitioner for extradition, and denied the first habeas petition without prejudice to asserting a Torture Convention claim in a second petition. On July 24, 2008, Petitioner waived his right to appeal the district court decision in the first habeas proceeding. On September 12, 2008, the Secretary of State issued a warrant to surrender Petitioner for extradition.[4] Petitioner then filed a request to stay extradition pending resolution of a second habeas petition. In orders filed September 29, 2008, the court granted the stay.

The present, second habeas proceeding was opened on November 24, 2008, as a petition for writ of habeas corpus under 28 U.S.C. § 2241, docketed as No. CV 08-7719-MMM(CW). (Petitioner's second habeas petition and other documents were originally filed in Case No. CV 07-6387, and were re-docketed under the new case number.) The second habeas petition challenges Petitioner's custody pending extradition to the Philippines under the Secretary of State's surrender warrant issued September 12, 2008. Petitioner contends that his extradition would violate the Torture Convention and federal law because there are

---

[4] If a person has been judicially certified as extraditable, the Secretary of State then decides whether to surrender that person to the foreign state. Vo, 447 F.3d at 1237. The Secretary may decide to extradite, not to extradite, or to extradite with conditions. See, e.g., United States v. Kin Hong, 110 F.3d 103, 109-10 (1st Cir. 1997).

substantial grounds to believe that he would be tortured if returned to the Philippines. Petitioner claims that the Secretary's decision to extradite him, in spite of his Torture Convention claim, was arbitrary in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq.[5]

Respondent filed an application to dismiss the second petition for lack of jurisdiction, which the parties fully briefed. In the February 13, 2009 Report and Recommendation, the magistrate judge recommended that the application to dismiss the petition be denied and that respondent be ordered to answer Petitioner's APA claim on its merits. Respondent filed objections (docket no. 40), and a notice of supplemental authority (docket no. 47) to which Petitioner filed a response (docket no. 48). In an order filed May 15, 2009 (docket no. 46), the court adopted the Report and Recommendation, denied the motion to dismiss, ordered Respondent to file an answer addressing Petitioner's APA claim on its merits, directed Respondent to submit evidence from the administrative record (sufficient to enable the court to determine whether the Secretary acted arbitrarily, capriciously, in abuse of discretion, or in violation of law in deciding to extradite Petitioner), and stated that Respondent might raise any issues about the protection of confidential materials.

On June 12, 2009, Respondent filed an application to certify the court's order for interlocutory appeal (docket no. 50). In a minute order filed July 20, 2009 (docket no. 57), the court denied this application and again ordered Respondent to file an answer and submit

---

[5] Petitioner also claims that the Secretary's decision denied him procedural and substantive due process under the Fifth Amendment, but the court has not reached, and need not reach, those claims.

evidence. In a notice of non-compliance filed August 3, 2009 (docket no. 58), Respondent reasserted the position that this court lacks jurisdiction to review the Secretary of State's final extradition decision, and respectfully declined to produce further evidence as ordered by the court.

In a motion filed August 4, 2009 (docket no. 4), Respondent made an anticipatory application for a detention hearing for Petitioner, and sought an order staying release. In a minute order filed August 28, 2009 (docket no. 63), the magistrate judge denied the application, without prejudice, as premature, stating that Petitioner was in custody, that the court had not ordered him released, and that, if the court issued the writ, the parties would then have an opportunity to litigate the issue of Petitioner's release or detention pending appeal.

At a status conference on September 4, 2009, counsel confirmed that the Government anticipates that the writ will be granted, intends to appeal on the issue of jurisdiction, and intends to ask the court to order that Petitioner remain in custody while the appeal is pending, and that Petitioner also anticipates that the writ will be granted, and intends to seek release on conditions pending appeal. [See minute order filed September 4, 2009, docket no. 64.] To expedite proceedings, counsel agreed that counsel would waive the opportunity to file objections to a second report and recommendation; that Magistrate Judge Woehrle would submit this matter to Judge Morrow for decision by presented order rather than report and recommendation; that the presented order would be lodged and served on the parties; and that, after the filing of this order, the court would hold a hearing on issues raised in Respondent's "anticipatory application"

(docket no. 59).  Since then, Petitioner has filed opposition to Respondent's application for continued detention (docket no. 66), and Respondent has filed a reply (docket no. 67).

## THE TORTURE CONVENTION

The Torture Convention was adopted by the United Nations General Assembly in 1984, and entered into force as to the United States in 1994.  See Cornejo-Barreto v. Seifert ("Cornejo-Barreto I"), 218 F.3d 1004, 1007 and n.1 (9th Cir. 2000).  Article 3 of the Torture Convention provides that "[n]o State Party shall . . . extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture."  Quoted in Cornejo-Barreto I, 218 F.3d at 1011.  Article 3 of the Torture Convention was implemented by Congress in 1998 in section 2242 of the "FARR Act," which stated that it was United States policy not to extradite any person to a country where there were substantial grounds for believing that person would be in danger of being tortured, and called for the adoption of regulations to implement that policy.[6]  The State Department adopted regulations implementing section 2242 of the FARR Act and defining the Secretary of State's duties under Article 3 of the Torture Convention in regard to extradition.  These regulations provide, in part, as follows:

> [T]he Secretary [of State] is the U.S. official responsible for determining whether to surrender a fugitive to a foreign country by means of extradition.  In order to implement the obligation assumed by the United States

---

[6] The FARR Act is the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, 112 Stat. 2681.  Section 2242 of the FARR Act was codified in a note to 8 U.S.C. § 1231.

> pursuant to Article 3 of the [Torture] Convention, the
> Department considers the question of whether a person facing
> extradition from the U.S. "is more likely than not" to be
> tortured in the State requesting extradition when
> appropriate in making this determination.
>
> Decisions on extradition are presented to the Secretary
> only after a fugitive has been found extraditable by a
> United States judicial officer.  In each case where
> allegations relating to torture are made or the issue is
> otherwise brought to the Department's attention, appropriate
> policy and legal offices review and analyze information
> relevant to the case in preparing a recommendation to the
> Secretary as to whether or not to sign the surrender
> warrant.
>
> Based on the resulting analysis of relevant
> information, the Secretary may decide to surrender the
> fugitive to the requesting State, to deny surrender of the
> fugitive, or to surrender the fugitive subject to
> conditions.

22 C.F.R. §§ 95.2-95.3 (2000)(quoted in Cornejo-Barreto I, 218 F.3d at 1011-12).

## **THE JURISDICTIONAL ISSUE**

As discussed at length in the Report and Recommendation cited above, this court's determination that it has jurisdiction to review Petitioner's Torture Convention claim is controlled by the Ninth Circuit's decision in Cornejo-Barreto I.  In Cornejo-Barreto I, as understood by this court, the Ninth Circuit held that a fugitive fearing torture if extradited may bring a claim in a habeas petition

8

under 28 U.S.C. § 2241, that such a claim would only be ripe if and when the Secretary of State makes a final decision to surrender the fugitive for extradition, and that a district court would then have jurisdiction to review such a claim. Cornejo-Barreto I, 218 F.3d at 1012-13. The Ninth Circuit summarized its conclusions as follows:

> The individual's right to be free from torture is an international standard of the highest order. Indeed, it is a jus cogens norm [footnote omitted]: the prohibition against torture may never be abrogated or derogated. [footnote omitted] We must therefore construe Congressional enactments consistent with this prohibition. In the extradition context, the approach we describe here allows us to give full effect to Congressional legislation without creating a conflict between domestic and international law. We recognize that Congress intended the Secretary of State to act as the "competent authority" charged with enforcing Article 3 of the Convention. We also recognize that Congress did not limit judicial review of the Secretary's decisions under long-standing APA procedures. An extraditee ordered extradited by the Secretary of State who fears torture upon surrender, therefore, may state a claim cognizable under the APA that the Secretary of State has breached her duty, imposed by the FARR Act, to implement Article 3 of the Torture Convention. Such a claim, brought in a petition for habeas corpus, becomes ripe as soon as the Secretary of State determines that the fugitive is to be surrendered to the requesting government.

Id. at 1016-17.

In applying to dismiss the present petition for lack of jurisdiction, Respondent raised five arguments applicable to the APA claim: that district court review of Torture Convention claims is barred by the "REAL ID Act"[7]; that judicial review of the Secretary's final extradition decisions is precluded by the "Rule of Non-Inquiry" as reaffirmed in Munaf v. Geren, ___ U.S. ___, 128 S. Ct. 2207, 171 L. Ed. 2d 1 (2008); that neither the Torture Convention nor the FARR Act overturned the Rule of Non-Inquiry; that the APA does not support judicial review of the Secretary's decisions; and that the suggestion in Cornejo-Barreto I that the Secretary's decisions are reviewable amounts to non-binding dicta.  These arguments were rejected after lengthy discussion in the February 13, 2009 Report and Recommendation. That determination was adopted by the court's May 15, 2009 Order, which also rejected further arguments raised in Respondent's objections.  That order and the discussion in the Report and Recommendation are incorporated in this order.  In rejecting Respondent's jurisdictional challenge, this court has relied on and continues to rely on its reading of the holding in Cornejo-Barreto I and its understanding that this holding remains the law of this circuit and is binding on this court.

**PETITIONER'S APA CLAIM**

The Cornejo-Barreto I Panel did not decide a claim under the Torture Convention and the APA, nor did it determine the evidence needed or the standard to be applied in reaching such a decision; instead, it simply held that a petitioner could obtain judicial review of such a claim once it became ripe.

---

[7] See the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231.

10

In Petitioner's case, it is undisputed that he presented a Torture Convention claim to the Secretary of State, that he was entitled to the Secretary's review of that claim (pursuant to the Torture Convention, the FARR Act, and the implementing regulations), and that, in issuing a surrender warrant, the Secretary rejected his Torture Convention claim. In the present action, Petitioner has presented to this court a non-frivolous claim for habeas corpus relief, contending that his custody pursuant to the surrender warrant is illegal because the Secretary's denial of his Torture Convention claim was arbitrary under the APA.[8]

As noted above, this court has held that Petitioner's Torture Convention claim is now ripe, and that this court has jurisdiction to review it under the APA. In its May 15, 2009 Order, the court ordered Respondent to answer Petitioner's APA claim on its merits and to submit evidence from the administrative record sufficient to enable the court to determine whether the Secretary acted arbitrarily in deciding to extradite Petitioner, while stating that Respondent might raise any issues about protection of confidential materials. Having unsuccessfully sought reconsideration or immediate appeal on the jurisdictional issue, Respondent then declined to comply with this court's orders on further proceedings. Accordingly, the court must now decide this claim under the APA, without Respondent's assistance.

Under the APA, a reviewing court must hold unlawful and set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Crickon v.

---

[8] Petitioner's claim that he fears being subjected to torture if extradited is supported by evidence that several of his co-defendants were subjected to torture while in custody in the Philippines.

11

Thomas, 579 F.3d 978, 982 (9th Cir. 2009)(quoting 5 U.S.C. § 706(2)(A). However, review is "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." Crickon, 579 F.3d at 982 (quoting Northwest Ecosystem Alliance v. U.S. Fish and Wildlife Service, 475 F.3d 1136, 1140 (9th Cir. 2007)(citation and internal quotation marks omitted)). "A reasonable basis exists where the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made." Crickon, 579 F.3d at 982 (quoting Arrington v. Daniels, 516 F.3d 1106, 1112 (9th Cir. 2008)(citation and internal quotation marks omitted)).

A court reviewing an agency decision considers the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [agency's] conclusion." Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). The reviewing court may set aside an agency decision that is "unsupported by substantial evidence." Robert F. Kennedy Medical Center v. Leavitt, 526 F.3d 557, 561 (9th Cir. 2008) (quoting 5 U.S.C. § 706(2)(E).[9] However, a court must review an agency decision based solely on the administrative record "and determine whether the agency has articulated a rational basis for its decision." Crickon, 579 F.3d at 982 (quoting Tablada v. Thomas, 533 F.3d 800, 805 (9th Cir. 2008)). The court may not attempt itself to make up for deficiencies in the record. Crickon, id. (citing Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut.

---

[9] "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 149, 117 S. Ct. 1953, 138 L. Ed. 2d 327 (1997) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)).

Auto. Ins., 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983)). Thus, the reviewing court may "not supply a reasoned basis for the agency's action that the agency itself has not given." Crickon, id. (citing Motor Vehicle Mfrs. Ass'n, id.). Nor should the reviewing court "infer an agency's reasoning from mere silence." Crickon, id. (quoting Arrington, 516 F.3d at 1112).

In Petitioner's case, Respondent has refused to provide the administrative record on which the Secretary relied in making her final decision.[10] Because of Respondent's refusal to comply with court orders, the court has no administrative record to review, no evidence to weigh, and no grounds for finding that the Secretary's decision was supported by substantial evidence. Respondent has refused to provide any relevant evidence from which this court could find that "the agency has articulated a rational basis for its decision." Crickon, 579 F.3d at 982. As noted above, this court may not attempt itself to make up for this deficiency by supplying "a reasoned basis for the agency's action that the agency itself has not given," and may not "infer an agency's reasoning from mere silence." Id. Accordingly, the court has no alternative by to conclude that a

---

[10] Petitioner contended in the Traverse (docket no. 62) that this court may presume that Petitioner's record in this court was incorporated in the administrative record. However, this court has no evidence as how the court record figured into the administrative process after Petitioner was certified as extraditable. The only evidence on this question yet supplied by Respondent consists of declarations attesting to procedures the State Department generally follows in deciding whether to surrender a fugitive, certified as extraditable, who states a claim under the Torture Convention. See, e.g., Declaration of Clifton M. Johnson, exhibit to Respondent's opposition to Petitioner's bail motion (docket no. 33, filed January 5, 2009). However, this evidence does not establish what the Secretary's decision in this specific case was based on, or whether that decision was arbitrary, which are the points at issue in the present action.

decision for which no rationale has been offered is, per se, arbitrary, and is not entitled to any deference.  See Crickon, 579 F.3d at 983 ("'[t]he agency's lack of explanation for its choice renders its decision arbitrary and capricious"')(quoting Arrington, 516 F.3d at 1112).

**ORDERS**

It is therefore **ORDERED** as follows:

1. The petition for writ of habeas corpus is granted.

2. Petitioner is ordered released from custody imposed pursuant to the Secretary's surrender warrant.

3. Judgment shall be entered accordingly.

4. The order releasing Petitioner from custody is stayed, for a period of sixty days, or such shorter time as is needed, for resolution of Respondent's application for Petitioner's continued detention pending appeal of this decision.

DATED:   November 17, 2009

_____
MARGARET M. MORROW
United States District Judge

Presented by

Dated: October 16, 2009

  /S/
_____
     CARLA M. WOEHRLE
United States Magistrate Judge